(100 App. Div. 171)

In re DRISKEL. In re MUSCHALL'S ESTATE. DRISKEL v. KNICKEN-
BERG.

(Supreme Court, Appellate Division, Fourth Department. January 4, 1905.)

1. WILLS—LEGACY—LIABILITY OF EXECUTOR.

　　Where legacies were left to testator's children with condition that the
testator's widow should receive the income from the principal during her
life, and the executor named in the will died before the estate was
administered, whereupon the widow was appointed administratrix with
the will annexed, remarried, and died, leaving a will directing payment
of the legacies required by her first husband's will, her second husband,
as executor, could not defeat the right of the children to the payment of
the legacies from his wife's estate, it appearing that there was sufficient
cash realized from testator's estate to have set aside the amount for the
payment of the legacies immediately after his death.

2. SAME—INTEREST.

　　Where a legacy was left by a husband to his children on condition
that his widow should be entitled to the income from the principal for
life, its retention after the death of the widow by the executor of the
widow's estate, into which the fund had passed during administration of
testator's estate, entitles the beneficiaries to interest thereon.

Appeal from Surrogate's Court, Erie County.

In the matter of the estate of Anthony Muschall, deceased, and
judicial settlement of the accounts of Andrew Driskel, as executor
under the will of Fredericka Driskel, deceased. From a decree re-
quiring payment by Driskel, as executor, of legacies and interest
thereon to Muschall's children, Driskel appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
HISCOCK, and STOVER, JJ.

John F. Mueller and Phillip A. Laing, for appellant.

Shire & Jellinek, Cecil B. Wiener, and Vernon Cole, for re-
spondent.

WILLIAMS, J. The decree should be affirmed, with costs. It
directed the executor of the Driskel estate to pay to the adminis-
tratrix of the Muschall estate the amount of a legacy under the
Muschall will of $5,000, with interest and costs, on the ground
that the amount of this legacy came into the hands of Mrs. Driskel
and was in her custody at the time of her death. The deceased,
Muschall, died August 6, 1872, leaving a widow and five children,
of whom the administratrix herein was one. The children were
from two to nine years of age at that time. He left a will, the
three provisions of which were as follows:

　"First,—I give, devise and bequeath to my children the sum of five thousand
dollars, to be equally divided between them, share and share alike, and to be
paid to them by my executor hereinafter named, after the death of my be-
loved wife, Fredericka Muschall, who shall have the use and benefit of said
amount for and during the time of her natural life for the better maintenance
and support of my said children, and it will be the duty of my wife to sup-
port my children from the profits of said money, and the property bequeathed
to her by this will.

　"Second,—All the rest and residue of my estate, real, personal and mixed,
I give, devise and bequeath to my beloved wife, Fredericka Muschall, to have
and to hold the same to herself, her heirs and assigns forever.

"Third,—I hereby appoint my trusted friend, Augustus Paul, sole executor of this, my last will and testament, and guardian of my said children, with power to pay to any of my said children, his or her share of the five thousand dollars aforesaid, after they shall have attained the age of twenty-one years, or at any other time at the written request and with the consent of my said beloved wife."

He left real estate worth about $8,000, and personal property worth about $9,000. This property consisted mainly of a brewery building and the appliances for carrying on the brewery business, and beer and materials for the manufacture of beer on hand. It was claimed also that the capacity of the brewery was 3,000 barrels per year, and that the good will of the business was $15,000, and the indebtedness of the estate was only $500, aside from some indebtedness for malt then on hand. The executor named in the will was duly appointed and qualified, but before he had administered the estate he died. Thereupon the widow was appointed administratrix with the will annexed, and took possession of the property of the estate. No inventory was filed by either the executor or the administratrix, and no account was ever made by either to the Surrogate's Court. The widow went on with the business, conducting it herself from the time of her husband's death until the early part of 1874. Then she married Andrew Driskel, and he came into the brewery, and took the general management of the business, and conducted it in his wife's name until the year 1885. Then, owing to changed conditions in beer manufacture, the brewery business became unprofitable, and was closed out. The machinery and stock on hand was sold, and the brewery building was converted into a residence, which the family occupied until June, 1894. Then Mrs. Driskel died, leaving a will, under which she made her husband executor and guardian of her minor children. By this will she gave her husband a life use of the brewery, residence building, he to keep same in repair and pay taxes and insurance, and after his death the same to go to her children, share and share alike. She also gave her husband the income during life of a bond or bonds of the Roman Catholic St. Louis Church of Buffalo, the bond or bonds after his death to be divided equally among her children. And then she gave all the balance of her estate to her husband absolutely. This will also contained the following provision:

"I order and charge my said husband, that when one of my children from my first husband, Muschall, shall marry during his lifetime, he shall pay to her the sum of One thousand ($1,000) dollars which is a legacy of their deceased father, and must be paid to every one of them besides their equal shares with my other children."

This will was made in March, 1890, and after the death of the testatrix was admitted to probate, and Driskel, the husband, was appointed executor, and entered upon the duties of the office. He made no inventory of the estate, and never had any accounting before the surrogate until the present one, commenced in April, 1902, seven years after the testatrix's death. She left the real property described in her will and one $500 bond of the St. Louis Roman Catholic Church, also referred to in the will; $500 in cash, on de-

.posit in the Buffalo Savings Bank; $1,500 of household furniture. There was also real property in the name of herself and husband of the value of $15,600, and mortgages to the amount of $5,300, running to both husband and wife. This real property and these mortgages were investments made more or less from moneys and property left by her first husband, Muschall; certainly from moneys so realized and from the carrying on of the brewery business. This decree appealed from was based upon the facts we have stated, the most of which are not controverted. Some question is made as to the brewery equipment, and the beer and personal property left by Muschall at his death, and the value thereof, but the referee heard the evidence and the arguments of counsel, and, after considering the matter, found the facts as we have stated them, and, inasmuch as Mrs. Muschall failed to file any inventory or have any appraisal of the property, we do not feel inclined to differ with the referee and the surrogate as to the facts as found.

Question is also made as to the findings of the referee with reference to the mortgages and real estate standing in the name of Mr. and Mrs. Driskel after her death, and the moneys and property that went into and paid for them. Here again we are not inclined to differ with the referee and the surrogate as to the findings of fact. The executor allowed seven years to elapse without filing any inventory or appraisal showing what property his wife left and what it was worth. He made no effort to account before the surrogate, or provide for the payment of these legacies which he was expressly charged to pay in the will of his deceased wife, the mother of these children. When he finally undertook to account, he exhibited but little honesty with regard thereto. The referee heard the witnesses and counsel, and, after examining the matter carefully, made these findings, and we see no reason why we should interfere with them. Muschall died, leaving his wife and five young children. He gave his wife all his property except a legacy of $5,000 to his children. He gave his wife the use or income from this legacy during her life, only requiring the principal of the fund to be paid to the children at her death. She was required by the will to maintain and support the children from the income from the $5,000 and from the whole balance of the estate, which was given to her. She received all this property, and it was her duty then to set apart the $5,000 for the children. She had no right to use the principal, but only the interest. She accepted the property, and with it the trust for the benefit of these children under the will; and when she came to die, she, by her will, charged her husband to pay this legacy from her property before any distribution thereof was made among her other children. She left enough property to pay the legacy. She made it a charge upon such property. Why shouldn't it be paid? The husband, this executor, went into this family a year and a half after the husband and father, Muschall, died. He helped to carry on the business for 10 years thereafter. He and his wife together accumulated a considerable property as an outgrowth of the business. He takes and keeps his wife's property, claims one-half of the mortgages and the whole of

the real property held by them in entirety, and struggles now to avoid the payment of this legacy. The decision of the referee, confirmed by the Surrogate's Court, directing him to pay the legacy, with interest from the death of his wife, when the children were entitled to receive the principal of the fund, is just, and should be affirmed here.

We do not see how any rules of law stand in the way of granting this relief. It was the duty of the executor named in the will to set apart the amount of this legacy and keep it intact. This fund could not, in whole or in part, be paid or delivered to the widow. She was entitled only to the use or income thereof. There can be no doubt but that there was property sufficient then to provide for this fund, and still leave a large amount for the widow. If that executor had lived, and had done his duty, he would have kept this fund, and had it intact when the widow died; and there would certainly be no doubt but he, or, if dead, his representatives, would, at the death of the widow, have been obliged to pay the fund to the children or to a newly appointed personal representative of their father's estate. The widow, having taken the place of the executor, had the same duty imposed upon her to keep this fund intact, and have it at her death, so the children could then have the benefit of it. There was property in her hands soon after her husband's death out of which she could have set aside this fund. If it turned out at her death that she had failed to do this, her estate was liable for the amount of the fund. If she did set the fund apart, and had it intact at her death, then certainly her estate would be liable for it. So that, in any event, we can see no way of escape for her estate. It must respond for the amount of this legacy. Up to the time of her death she had a right to use the income from the fund, but the moment she died the income, as well as the principal, belonged to the children; and if the principal was retained by the estate, and not paid over, the income was accumulating, and the estate was liable for it. The interest was therefore properly allowed by the decree.

There were some exceptions taken to the admission and rejection of evidence, but none that require a reversal of the decree.

The decree or order should be affirmed, with costs. All concur.